UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ROBERT A. KRUPPSTADT,

        Petitioner,

     v.                                    Case No. 04-CV-443

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

On May 7, 2004, Robert A. Kruppstadt ("Kruppstadt") filed a petition under 28 U.S.C. § 2255 to vacate, set-aside, or correct the federal sentence he is currently serving. This matter has been fully briefed and is now ready for decision. For the reasons set forth below, Kruppstadt's petition will be denied.

## BACKGROUND

On November 11, 1998, a grand jury sitting in this district returned a superseding indictment charging Kruppstadt, along with 16 other co-defendants, with Racketeer Influenced and Corrupt Organizations ("RICO") offenses, RICO conspiracy offenses, drug conspiracy offenses, assault with a dangerous weapon offenses, and the interstate transportation of explosives with intent to kill. (*See United States v. O'Neill, et al.*, Case No. 97-CR-98, November 11, 1998 Superseding Indictment, Docket # 793.) Specifically, Kruppstadt was charged at counts one through three with violations of 18 U.S.C. §§ 1962(c) and (d), 21 U.S.C.

§§ 841(a)(1), 846, and 18 U.S.C. § 2; and at counts five through seven with violations of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 844(d). Kruppstadt pled not guilty to each of these offenses, and after several rounds of pretrial motions, he proceeded to trial. On June 15, 2000, he was found guilty of all counts except count seven. He was sentenced to three concurrent terms of 240 months' imprisonment to run consecutive to two concurrent 48-month terms of imprisonment for a total sentence of 288 months' imprisonment. Kruppstadt appealed to the Seventh Circuit Court of Appeals, which affirmed the convictions and sentence. *United States v. Warneke,* 310 F.3d 542 (7th Cir. 2002). He then petitioned for rehearing en banc and for writ of certiorari to the Supreme Court, both of which were denied. *See Kruppstadt v. United States*, 538 U.S. 1048 (2003).

Kruppstadt's section 2255 petition sets forth 13 separate grounds in support of his claim for relief. At grounds one through eleven, Kruppstadt states that he is incorporating by reference the section 2255 petition of his former co-defendant, Kevin O'Neill. (*See O'Neill v. United States*, Case No. 04-CV-461). At grounds 12 and 13, the only grounds that Kruppstadt has submitted his own supporting materials, Kruppstadt argues that he suffered Sixth Amendment violations due to the ineffective assistance of counsel at trial and sentencing. On July 1, 2004, Kruppstadt filed an amendment to his section 2255 petition, arguing that pursuant to the decision in *Blakely v. Washington*, he ought have his sentence vacated and his term of imprisonment reduced. On June 26, 2006, Kruppstadt filed a motion to

-2-

hold his section 2255 petition in abeyance pending the U.S. Supreme Court's decision in *Burton v. Waddington*, *cert. granted*, 126 S. Ct. 2352 (2006). Finally, on September 11, 2006, Kruppstadt filed a motion to amend his section 2255 petition based upon newly discovered evidence.

## ANALYSIS

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the ground that his sentence was imposed in violation of the Constitution or the laws of the United States. To receive relief under section 2255, a petitioner must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979). The Seventh Circuit has also articulated that the substance of the petition takes precedence over its form, and petitions that arise under section 2255 are properly treated as such. *Guyton v. United States*, 453 F.3d 425 (7th Cir. 2006). Kruppstadt's petition clearly alleges that his sentence was imposed in violation of his Sixth Amendment rights along with other constitutionally protected rights, and the court notes at the outset it falls classically within the purview of section 2255 petitions.

## I.    Grounds One through Four

In his petition at grounds one through four, Kruppstadt incorporates by reference grounds one through four of O'Neill's petition pursuant to 28 U.S.C.

-3-

§ 2255. O'Neill's petition at grounds one through four all relate to matters that he suffered ineffective assistance of counsel in violation of the Sixth Amendment. (*See O'Neill v. United States,* Case No. 04-CV-461, Docket # 3) (hereinafter "O'Neill's Pet."). Kruppstadt does not have standing to assert ineffective assistance of counsel based upon the actions of a co-defendant's attorney. Accordingly, the court will not consider Kruppstadt's attempt to incorporate grounds one through four of O'Neill's petition, and they are hereby denied.

## II. Ground Five

Through O'Neill's petition, Kruppstadt alleges at ground five that his sentence ought be vacated because the integrity of the grand jury was compromised for two reasons. First, he argues the handling of the superseding indictment corrupted the proceedings before the grand jury. Second, he argues that the exclusion of Native Americans from the jury panel violates due process and equal protection.

Second, Kruppstadt argues the exclusion of Native Americans from grand jury and petite jury service deprived him of his due process and equal protection rights. Specifically, Kruppstadt states that "[n]o Native American was called for grand jury service, or as a foreman, during the period grand jurors were summoned for service to hear evidence in connection with the indictment returned against Petitioner." (O'Neill's petition 79). However, Kruppstadt's categorization of the Eastern District's venire is misguided, and as a result, his reasoning and arguments as to why the plan fails constitutionally are flawed.

-4-

The Seventh Circuit addressed the constitutional implications of the Eastern District's jury selection process, and found that the procedures excluding all Indians who live on reservations from venire panels did not violate the Sixth Amendment or Equal Protection. *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999). In *Raszkiewicz*, the defendant challenged the representativeness of the jury selection process in his case. The procedure for selecting jurors in the Eastern District distinguishes between "reservation Indians" and "urban Indians"; Indians living on reservations are excluded from venire panels, but urban Indians are not. Raszkiewicz challenged this practice and argued it violated his constitutional right to a fair cross-section of the community because no reservation Indians were included in his venire panel. *Id.* Judge Cummings, writing for the Seventh Circuit, stated, "one might doubt the wisdom and reasonableness of the Eastern District's policy, Raszkiewicz has not shown that the defects of that policy rise to a constitutional level." *Id.* Judge Cummings further explained that to show a denial of Sixth Amendment rights, one must demonstrate that a venire panel or jury does not represent a fair cross-section of the community; although it needn't mirror the general population. *Id.* at 462.

However, and what is most important, is that the Seventh Circuit in *Raszkiewicz* recognized that Native Americans did in fact serve on jury panels in the Eastern District; they just weren't selected from Indian reservations. Thus, Kruppstadt's argument that *no* Native American has served on a jury between 1992

-5-

and 1998 ignores reality and disavows previous findings of this circuit. To make a prima facie case that the fair cross-section requirement has been violated, a defendant must show that: (1) the group allegedly excluded is a distinctive part of the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under representation is due to systematic exclusion of the group in the jury selection process. Kruppstadt is not even able to make a prima facie case in his argument, and accordingly, his petition as to ground five will be denied.

### III.    Ground Six

At ground six, Kruppstadt once again cites to O'Neill's petition and raises a variety of arguments alleging that the court did not have subject matter jurisdiction over the offenses charged in the indictment. Each of these arguments will be discussed below, although the court notes at the outset that none of Kruppstadt's claims have merit.

Kruppstadt begins by arguing that the U.S. Supreme Court decisions *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Jones v. United States*, 526 U.S. 227 (1999) support dismissal of the indictment. Although Kruppstadt is not entirely clear in his explanation that these cases warrant dismissal of the indictment, neither of these decisions provide support to this contention. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the

-6-

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Similarly, *Jones* held that each element of an offense must be charged in the indictment, submitted to a jury, and proven by the government beyond a reasonable doubt. As the Seventh Circuit held in affirming Kruppstadt's conviction, the *Apprendi,* and similarly, *Jones* requirements were satisfied. *See U.S. v. Warneke*, 310 F.3d 542, 549 (7th Cir. 2002) (holding that due process requirements were satisfied because the jurors returned special verdict forms and found beyond a reasonable doubt the circumstances that raised the punishments; even when the indictment did not include all of the circumstances affecting punishment). Equally important, neither of these cases relate to the subject matter jurisdiction of the court.

Next, Kruppstadt argues that the court lacked subject matter jurisdiction to impose a sentence at counts one and two of the indictment because these counts relied on predicate acts which were barred by the statute of limitations. However, although the statute of limitations requirement for 18 U.S.C. § 3852 is five years, it is only required that each defendant must have committed at least one act of racketeering within five years of the date of the indictment for the statute of limitations to be satisfied. *United States v. Maloney*, 71 F.3d 645, 662 (7th Cir. 1995). Here, the statutory time frame was satisfied because each racketeering act occurred between 1993 and 1995, which is well within the applicable statutory time frame. Thus, there was no statute of limitations violation.

-7-

Third, Kruppstadt argues his Speedy Trial Act rights, as set forth in 18 U.S.C. § 3161, were violated. The Speedy Trial Act of 1974 generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance. *See* 18 U.S.C. § 3161(c)(1). However, certain periods of time between arraignment and trial are excluded from the speedy trial calculation. 18 U.S.C. § 3161(h). Importantly, "[a]ny period of delay resulting in a continuance . . . [is excluded] if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). "Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Hemmings*, 258 F.3d 587, 593 (7th Cir. 2001).

The record conclusively shows that the requisite finding was made by Magistrate Judge William E. Callahan, Jr. in a July 1, 1997 scheduling order stating that the case was "so unusual and so complex," both due to the number of defendants and the nature of the charges that it was unreasonable to expect adequate preparation within the time limits of section 1861; Magistrate Callahan further granted a continuance of time limits and stated such extension was granted "on the grounds that the ends of justice served by taking such action outweigh the best interests of the public and the defendants in a speedy trial." (July 1, 1997 Scheduling Order). The speedy trial clock was also tolled at various times during the

-8-

briefing of motions and the defendants' interlocutory appeal of the superseding indictment. Moreover, the Speedy Trial Act is not self-executing; a defendant must move for a dismissal. Congress has specifically provided that failure to move for dismissal before trial constitutes a waiver of the right to dismissal. 18 U.S.C. § 3162(a)(2); *see also United States v. Baldwin*, 959 F. Supp. 1012, 1016-17 (S.D. Ind. 1997). Therefore, Magistrate Callahan's findings, coupled with the tolling of certain time periods, and applicable Seventh Circuit law, provide that there was no speedy trial violation.

Kruppstadt's next argument in support of ground six alleges that the RICO and non-RICO counts did not have the requisite interstate nexus to confer jurisdiction upon the court. He claims count six, which charges violations of 18 U.S.C. § 844, has no connection to interstate commerce because there is no reference to the type of explosive or if the explosive was transported. Kruppstadt is mistaken; 18 U.S.C. § 844(d) unequivocally sets forth the requisite federal nexus and states, in pertinent part, "[w]hoever transports or receives, or attempts to transport or receive, *in interstate or foreign commerce* any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate." 18 U.S.C. § 844(d) (emphasis added). Clearly, the interstate requirements are set forth within the statute itself, and Kruppstadt's arguments that the court did not have jurisdiction over count six fail. Additionally, Kruppstadt's argument that the individual predicate acts do not affect interstate commerce is irrelevant. The Seventh Circuit has held individual predicate acts do

Case 2:04-cv-00443-JPS    Filed 07/11/07    Page 9 of 32    Document 10

not necessarily need to affect interstate commerce; it's only the enterprise that must affect interstate commerce to satisfy jurisdiction. *See United States v. Farmer*, 924 F.2d 647, 651 (7th Cir. 1991).

Kruppstadt poorly articulates his argument that the indictment failed to set forth elements of 18 U.S.C. § 2, and is "fatally flawed" because of this alleged deficiency. This statute does not define a crime, it only sets forth when a defendant may be punishable as a principle. *See* 18 U.S.C. § 2. The indictment need not set forth elements of 18 U.S.C. § 2, and was not "fatally flawed" as Kruppstadt argues. Kruppstadt also argues that this somehow converts the indictment into being multiplicitous and duplicitous. An indictment is duplicitous if separate offenses are charged in a single count in the indictment. *United States v. Smith*, 26 F.3d 739, 753 (7th Cir. 1993). An indictment is multiplicitious if a single offense is charged in multiple counts of an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995). Kruppstadt's indictment was neither; each of the seven counts in the superseding indictment charge separate offenses that are neither multiplicitous nor duplicitous.

Kruppstadt also argues that the court did not have subject matter jurisdiction over the offense because certain predicate acts in the indictment violate *ex post facto* provisions. Article I, Section 10 of the United States Constitution prohibits a state from passing any "*ex post facto* Law." U.S. Const. amend. I § 10. Summarized, this means that no state may enact a statute punishing as criminal, conduct

-10-

otherwise lawful at the time it was committed, thus making the punishment more burdensome after having committed otherwise lawful conduct, or depriving one of a defense previously available during the commission of a crime. *See, e.g., Dobbert v. Florida*, 432 U.S. 282, 292 (1977). In contrast, it does not violate *ex post facto* provisions to impose criminal liability for an action that was lawful when it began, but which continued after a statute made such actions unlawful. *See, e.g., United States v. Couch*, 28 F.3d 711, 715 (7th Cir. 1994). Congress clearly contemplated this principle in enacting the RICO statute as a Senate Judiciary Committee Report stated:

> [o]ne act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against ex post facto laws, and bills of attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies of this chapter.

S. Rep. No. 91-617, at 158 (1969); *see also United States v. Campanale*, 518 F.2d 352, 364 (9th Cir. 1975). Pursuant to these clearly established laws and demonstrated Congressional intent, Kruppstadt's conviction did not violate the *ex post facto* clause.

Kruppstadt also attacks the subject matter jurisdiction by alleging that the counts charging violations of 18 U.S.C. § 1959 must be dismissed because there is no requisite interstate nexus to that count. Kruppstadt is mistaken in his argument that 18 U.S.C. § 1959 lacks an interstate nexus or fails to charge a federal crime.

-11-

Section 1959(a)(3) explicitly sets forth that:

> [w]hoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both.

18 U.S.C. § 1959(a)(3). Section 1959 then implicates federal jurisdiction and an interstate nexus by defining "enterprise" as a "group of individuals . . . which is engaged in, or the activities of which affect, interstate or foreign commerce." *Id.* Thus, the plain language of the statute invokes the necessary federal jurisdiction, and Kruppstadt's arguments that the court lacked subject matter jurisdiction fails.

## IV.    Ground Seven

At ground seven, Kruppstadt cites to O'Neill's petition and argues that the handling of the Title III wiretaps used in this case violated his due process rights. He also requests an evidentiary hearing to be heard on this matter. Specifically, Kruppstadt argues that the government failed to disclose Mark Quinn's availability to act as an informant for the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and that the government failed to disclose that Agent Robert Brown was discharged from the Title III investigation. As will be discussed below, Kruppstadt has not set forth

-12-

any reason why he is entitled to relief on this ground, nor has he established that he is entitled to an evidentiary hearing on this matter.

In the context of federal habeas petitions, a petitioner must make more than generalized allegations in support of a request for an evidentiary hearing. *See Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (stating that bare allegations that are unsupported by specific facts to not provide grounds for holding an evidentiary hearing). However, Kruppstadt has not set forth any facts beyond bare allegations. By reference, Kruppstadt relies on the affidavits submitted by O'Neill which claim that there is newly discovered evidence that the government failed to disclose Mark Quinn as an available informant at the time they applied for the Title III intercept authorization. O'Neill submitted an affidavit of a fellow inmate, Robert Ofcky ("Ofcky"), in which Ofcky avers he was asked but declined to be a government cooperator in an Indiana Field Office investigation. Ofcky goes on to state that he was told by agents that if he chose to cooperate, he would be working with another individual in an attempt to infiltrate motorcycle clubs. Years later, Ofcky comes to guess that this individual was Mark Quinn. These statements are not only estimated opinions of Ofcky, they're not corroborated in any way. Accordingly, the court is obliged to deny the request for a hearing as Kruppstadt has not set forth adequate corroborated facts in support of one.

Next, Kruppstadt argues that the government improperly failed to disclose the discharge of Robert Brown from the Title III task force. Similarly to his previous bare

-13-

allegations, he claims that upon information and belief, Robert Brown was discharged from the Title III task force for disclosure violations. He claims had he previously known that Detective Brown had violated Title III policies and had been discharged for doing so, Kruppstadt would have called him as a witness. Kruppstadt further argues this information would have been material to suppression issues before the court. However, these statements are hardly more than guesswork by O'Neill, and such allegations that are void of any corroborated support do not warrant a hearing on the matter relating to the Title III investigation.

Additionally, these issues have already been visited by the court and resolved against Kruppstadt. His arguments essentially amount to allegations that the government did not meet the "necessity" requirement of Title III, and this issue was thoroughly resolved during the pretrial stages of the prosecution. (*See* June 3, 1998 Order, Docket # 619 at 10-26) (Magistrate Callahan's finding that the government complied with the Title III requirements to show necessity and exhaustion.) Moreover, the matter of Quinn's possible availability as a confidential informant also was brought to the court's attention in post-conviction motions, and this too already has been resolved. In the August 25, 2000 order denying Kruppstadt's motions for judgments of acquittal, the court considered a co-defendant's argument that Quinn's availability as a confidential informant undermined the government's necessity for the wiretaps and stated:

-14-

> Kruppstadt's argument fails to persuade the court. There is no evidence that the ATF knew of Quinn's desire to assist the government. Quinn apparently backed out of this initial foray into government service before it ever got started. Nor is Kruppstadt's lone allegation of an aborted effort to assist the government convincing.

(August 25, 2000 Order, Docket # 1619 at 47-48.) Accordingly, Kruppstadt has brought no new evidence or information to light, and the matters he does raise already have been resolved. He has not convinced the court that a hearing is necessary, and his petition is denied on this ground.

## V.    Ground Eight

At ground eight of O'Neill's petition, he alleges the concurrent life sentences and the multiple special assessments imposed constitute double jeopardy. Although Kruppstadt did not receive concurrent life sentences, he did receive concurrent sentences and the court will construe O'Neill's arguments as they would apply to Kruppstadt's concurrent sentence as to counts one, two, three; and five and six. Kruppstadt also received a special assessment as to each count of conviction, and he argues this similarly constitutes double jeopardy. As will be discussed below, neither of these aspects of his sentence violate double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment protects defendants from being tried and punished more than once for the same offense. The Double Jeopardy Clause has three basic protections: first, the clause prevents a subsequent prosecution for the same offense after an acquittal; second, it prevents subsequent

prosecutions for the same offense after a conviction; and third, it prevents multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 342-43 (1975) (citing *North Carolina v. Pearce*, 395 U.S. 711(1969)). Relying on overlapping predicate acts to impose concurrent yet separate sentences will not offend the Double Jeopardy Clause. *See United States v. Morgano*, 39 F.3d 1358, 1369 (7th Cir. 1994). Accordingly, Kruppstadt has suffered no double jeopardy violation.


**VI. Ground Nine**

At ground nine, Kruppstadt alleges that the indictment was constructively amended by the trial court and the government. As this claim relates to Kruppstadt, he does not set forth any facts supporting that the indictment was constructively amended as to him, and the court also finds that the indictment was not in fact constructively amended.

At ground nine, Kruppstadt alleges that the indictment was constructively amended by the trial court and the government. His argument is without merit. The Fifth Amendment states, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. (2007). This provision prohibits constructively amending an indictment at trial because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial "match in order 'to insure that the defendant is not subject to a second prosecution, and to

-16-

give the defendant reasonable notice so that he may prepare a defense." *United States v. Trennell,* 290 F.3d 881, 888-89 (7th Cir. 2002). A constructive amendment occurs when "the government. . .the court. . .or both, broadens the possible bases for conviction beyond those presented by the grand jury." *Id.* at 888 (quoting *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998)).

Kruppstadt essentially argues that the government broadened the basis for his conviction by presenting evidence unlawfully obtained through Title III interceptions. This statement is simply inaccurate; the Title III issues in this case have been litigated *ad nauseum,* and the Seventh Circuit determined that no evidence was unlawfully obtained through Title III interceptions and his arguments to the contrary fail. *United States v. Warneke,* 310 F.3d 542 (7th Cir. 2002). Kruppstadt relies on O'Neill's attacks on various definitions and phrasing of the jury instructions, but these issues were also resolved against him on appeal. *Id.* at 548 (noting "the language the district judge used [in the jury instructions] does not vitiate the conviction").

## VII.  Ground Ten

At ground ten, Kruppstadt once again claims the court was without subject matter jurisdiction in this case, and sets forth a myriad of reasons why the court did not have subject matters jurisdiction to sentence him, several claims which are similar to issues he raised in ground six, but none of which have any merit.

First, Kruppstadt's argument that penalty provision must have been submitted to the jury is without merit because the Seventh Circuit resolved this issue on direct

-17-

appeal. Even though the indictment did not include all of the details that potentially affected the sentence, this court asked the jury to return special verdicts, one for each predicate act, and the Seventh Circuit held that this satisfied due process. *See United States v. Warneke*, 310 F.3d 542, 549 (7th Cir. 2002).

Second, Kruppstadt's argument that the Doctrine of Lenity prohibits a term of imprisonment longer than 20 years is also without merit. The Doctrine of Lenity requires that an ambiguity be resolved in the defendant's favor where a "grievous ambiguity or uncertainty in the language and structure of the Act." *United States v. Ranum*, 96 F.3d 1020, 1030 (7th Cir. 1996) (quoting *United States v. Neal*, 46 F.3d 1405, 1410 (7th Cir. 1995)). However, 18 U.S.C. § 1963 contains no ambiguities because it clearly sets forth criminal conduct that will implicate the penalties. As such, Kruppstadt's second argument that the court did not have subject matter jurisdiction to impose his sentence fails.

Third, Kruppstadt's argument that the sentence imposed for predicate acts 23 and 24 and counts three and four are similarly without merit because as discussed above, this court instructed the jurors to complete special forms regarding matters that would enhance penalties. *See Warnkeke*, 310 F.3d at 549.

Fourth, Kruppstadt's various arguments relating to count five are, in each instance, without merit. Count five is not barred by double jeopardy, nor barred by the statute of limitations, nor does it fail to charge a federal offense as Kruppstadt is attempting to argue. Kruppstadt's attempt to show a double jeopardy violation by

-18-

claiming that because facts of the offense used in count five were also used in counts one and two fails. A defendant is not held in double jeopardy if he is charged with multiple crimes that have different elements that arise from the same factual circumstances or evidence. *See Ohio v. Johnson*, 467 U.S. 493, 500 (1984). Kruppstadt has also failed to provide sound reason for why this count is barred by the statute of limitations. Chapter 18 of the United States Code section 3288 states that if an "indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, the new indictment shall not be barred by any statute of limitations." 18 U.S.C. § 3288. Finally, count five is a federal crime because it contains the requisite "affecting interstate commerce" language to invoke federal jurisdiction.

Fifth, Kruppstadt's arguments that counts six and seven must be vacated because they do not charge federal crimes are inaccurate. Counts six and seven charge a violation of 18 U.S.C. § 844(d), which states:

> Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned for not more than ten years, or fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not more than twenty years or fined under this title, or

-19-

both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

18 U.S.C.§ 844(d). Clearly, the transport of explosives in foreign or interstate commerce provides the jurisdictional nexus for federal jurisdiction. *Id.*

Sixth, Kruppstadt argues that the government failed to file an Information of Notice of Enhancement pursuant to 18 U.S.C. § 3559(c)(1-3); however, Kruppstadt was not sentenced pursuant to this statute and his argument as it relates to a statute that is inapplicable to him will not be considered.

Seventh, Kruppstadt's arguments that his sentence was not purely concurrent because separate special assessments were imposed and that this imposition is duplicitous and violates double jeopardy. Kruppstadt's arguments are incorrect. Pursuant to 18 U.S.C. § 3013 a defendant is to pay a special assessment for each count of conviction for offenses against the United States. *See* 18 U.S.C. § 3013. The imposition of a special assessment for each count of conviction does not amount to a double jeopardy violation.

Eighth, as discussed above, Kruppstadt's claim that the drug sentence must be vacated for a failure to charge a drug quantity is without merit because the Seventh Circuit directly resolved this matter on appeal. *See United States v. Warkenke*, 310 F.3d 542 (7th Cir. 2002).

-20-

Ninth, in Kruppstadt's claim under ground ten, he argues the sentences imposed for violations of 18 U.S.C. § 844 must be vacated because the indictment failed to set forth the type of explosive used. This argument is without merit because the type of explosive used is not an element of the offense and need not be set forth in the indictment. *See* 18 U.S.C. § 844; *see also* Fed. R. Crim. P. 7(c). The other arguments set forth in this paragraph will not be discussed as they are inapplicable to Kruppstadt.

Tenth, Kruppstadt argues that the court used the wrong United States Sentencing Guidelines Manual in calculating his sentencing range, and this violates the *ex post facto* clause. Section 1B1.11 of the United States Sentencing Guidelines Manual states that the "court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a) (2006). Furthermore, to obviate *ex post facto* concerns, the Guidelines Manual further directs that

> [i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

*Id.* at 1B1.11(b)(1). Kruppstadt has not set forth any reason that the guideline construct as applied to him violates the *ex post facto* clause, and the court is obliged to deny him relief.

Eleventh, Kruppstadt's arguments that the fines and restitution were imposed in violation of statutory authority is without merit. To begin, Kruppstadt was not

-21-

assessed any amount of restitution and his arguments that the court violated statutory authority in imposing a restitution amount will not be considered as it is moot. Second, as to Kruppstadt's argument about the court-imposed fine, there is clearly statutory authority under 18 U.S.C. § 3571 to impose a fine and Kruppstadt's arguments to the contrary are without merit.

Twelfth, Kruppstadt's argument that the sentences imposed were in violation of the underlying state statutory limits. Kruppstadt is mistaken; he was charged, convicted, and sentenced to federal crimes and as discussed above, the federal statutory limits were satisfied notwithstanding his argument to the contrary.

And finally, Kruppstadt's thirteenth ground and argument that the court was without jurisdiction to forfeit the Outlaw clubhouses is similarly without merit. Section 1963 of Title 18 of the United States Code provides that violations of 18 U.S.C. § 1962 shall result in punishments as outlined in section 1963. Aside from fines, and imprisonment, section 1963 provides for forfeiture of any real property. *See* 18 U.S.C. § 1963. Accordingly, the court had full statutory authority to order forfeiture of Outlaw clubhouse properties, and Kruppstadt's arguments provide no basis for relief.

## VIII.  Ground Eleven

Ground Eleven of O'Neill's petition once again alleges ineffective assistance of counsel, an inquiry that is unique to O'Neill and that Kruppstadt therefore does not have standing to raise. Accordingly, the court concludes that Kruppstadt's eleventh ground provides no basis for relief and it will not be considered.

## IX.    Grounds Twelve and Thirteen

Grounds 12 and 13 are the only grounds Kruppstadt filed by himself and without the incorporation by reference to O'Neill's petition. Both grounds are claims that he suffered ineffective assistance of counsel in violation of the Sixth Amendment. At Ground 12, Kruppstadt alleges his trial attorney rendered ineffective assistance at his sentencing hearing, and at Ground 13, Kruppstadt alleges his attorney failed to competently examine government witness David Wolf during trial. Each of these allegations will be discussed separately below.

To establish that he was deprived of his right to effective counsel, Kruppstadt must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). When evaluating the attorney's conduct, the court is "highly deferential" towards counsel, and there is a presumption that the attorney performed within the bounds of a wide range of reasonable professional assistance. *Id.* at 669; *see also United States v. Holman*, 314 F.3d 837 (7th Cir. 2002). Thus, to meet this high burden, Kruppstadt must demonstrate that he suffered "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.

Kruppstadt forms the basis for his first ineffective assistance of counsel claim by contending that at his sentencing hearing, his attorney failed to object to the

-23-

United States Sentencing Guideline § 3B1.1, and also failed to present evidence to disprove that the enhancement was appropriately applied. Kruppstadt received a three-level enhancement under section 3B1.1 for his "role in the offense" upon the court's finding that he played a managerial and supervisory role in the overall offense.

Section 3B1.1(b) provides for a three-level upward departure if a defendant is found to be a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b) (2006). Thus, if Kruppstadt was a manager or supervisor and the criminal activity involved five or more participants, section 3B1.1(b) appropriately applies.

The presentence report prepared by the probation department and the government both recommended a three-level enhancement. Each relied in part on an audiotape stating that Kruppstadt, the Outlaw's vice-president, directed the criminal activities of the group in the absence of O'Neill, the Outlaw's president. Additionally, the government provided other specific instances demonstrating that Kruppstadt provided direction and supervision to lower-ranking members of the group.

Kruppstadt argues that the section 3B1.1 enhancement is nevertheless inapplicable, and his attorney did not properly object or provide evidence to discredit the enhancement. To be sure, the record does show that Kruppstadt's attorney

-24-

objected to the three-level enhancement; however, Kruppstadt complains that his attorney's objection and comments were insufficient. Kruppstadt first complains that his attorney was not sufficiently knowledgeable of the applicable law and due to his ignorance, did not adequately object to the enhancement. He points out that at sentencing, when the court commented on Kruppstadt's role as vice-president, his attorney replied, "the court will also note I believe that Messrs. Mroch and Morgan also have some sort of position yet they are not meeting with this type of enhancement." (Sentencing Tr. 26-27, October 11, 2000.) Kruppstadt argues "the above statement is ridiculous considering that the only thing a competent attorney would have needed to do . . . was to present Application note 4." (Kruppstadt's Petition 6.) Application note 4, of course, explains that "[i]n distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling." U.S.S.G. § 3B1.1 app. 4. Kruppstadt was assessed the three-level "manager or supervisor" enhancement, not the "leadership/organizational" role, and the application note is somewhat less compelling in that regard. Moreover, that his attorney sought to point out similarly situated individuals who were not assessed an enhancement is a sound strategy for demonstrating that it may not apply to his client. Kruppstadt also admonishes his attorney for misstating the number when referring to the guideline (saying "2B1.1" rather than "3B1.1."), but despite this mistaken reference, it is clear from a thorough review of the sentencing hearing that his attorney was referring to the correct

-25-

sentencing guideline. Kruppstadt has not set forth any grounds that demonstrate that his attorney's representation fell below an objective standard of reasonableness.

Kruppstadt further argues that it was error to have been the recipient of a three-level enhancement in the first instance, but these arguments are similarly without merit. The government presented compelling evidence that portrayed Kruppstadt as a "manager or supervisor" as section 3B1.1 contemplates. It is important to note, as the government's response points out, the Seventh Circuit has held that in determining whether section 3B1.1 applies, the sentencing court "need not confine itself to the offense of conviction but may look to all relevant conduct within the scope of U.S.S.G. § 1B1.3 (Relevant Conduct). *United States v. Montague*, 29 F.3d 317, 323 (7th Cir. 1994). Thus it follows that Kruppstadt's argument that he did not manage or supervise individual racketeering acts is irrelevant; a court must consider the overall RICO conduct in determining the applicability of section 3B1.1.

Kruppstadt further attempts to bolster his argument by citing to *United States v. Sienkowski*, 252 F. Supp. 2d. 780 (E.D. Wis. 2003). Thomas Sienkowski, another Outlaw vice-president, was charged in racketeering and drug-related offenses and sentenced before Judge Adelman. The court found that the government did not present sufficient evidence warranting the section 3B1.1 enhancement. *Id.* However, and most importantly, the Seventh Circuit vacated and remanded the case *United States v. Sienkowski*, 359 F.3d 463 (7th Cir. 2004); upon resentencing, Judge

-26-

Adelman found that the section 3B1.1 enhancement did indeed apply. (*See United States v. Sienkowski*, Case No. 01-CR-108 at Docket # 394.) In sum, Kruppstadt has not set forth any grounds that he suffered ineffective assistance of counsel.

The second part of Kruppstadt's argument that he suffered ineffective assistance of counsel due to his attorney's failure to adequately cross-examine David Wolf similarly provides no support for the court to grant his section 2255 petition. Specifically, Kruppstadt argues that his attorney failed to properly cross-examine Wolf because he did not present evidence of inconsistent testimony given by Wolf nor ask Wolf if his "memory gets clearer as the years go by." As stated above, the standard for examining allegations of ineffective assistance of counsel is highly deferential to the attorney, and this deference is even more appropriate when examining the trial tactics and strategy of counsel. *See Strickland*, 466 U.S. at 689; *see also United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990).

The record shows that Kruppstadt's attorney did indeed engage in a thorough cross-examination of a leading government witness, David Wolf. (Trial Tr. vol. 47, 544-62, April 5, 2000.) His attorney asked questions eliciting responses that could tend to show a lack of reliability. For example, his attorney asked Wolf questions relating to his extensive drug use. (*Id.* 544). His attorney also attempted to impeach Wolf by pointing out discrepancies between his testimony and his prior debriefings and his wife's diary. (*Id.* 549,559). He also attempted to illicit information showing

-27-

that there was a substantial amount of tension between Wolf and his client. (*Id.* 550). Additionally, his attorney highlighted the facts that Wolf would likely be receiving a substantial cut in his incarceration time for assisting the government. (*Id.* 560). All of these show sound trial tactics and a strategy to defend Kruppstadt; the court finds that Kruppstadt's attorney's conduct at trial, including the fact that he didn't ask questions Kruppstadt argues needed to be asked, does not even come close to falling below an objective standard of reasonableness. Accordingly, Kruppstadt has not provided any basis for the court to conclude that he suffered ineffective assistance of counsel as defined by *Strickland*.

## X.     Amended Filings

Lastly, Kruppstadt's amendment similarly does not provide support for vacating, correcting, or setting-aside his federal sentence. Kruppstadt's July 1, 2004 filing argues *Blakley v. Washington*, 542 U.S. 296 (2004), provides for a downward departure and a significant reduction in prison time. In Kruppstadt's June 26, 2006 motion to hold his petition in abeyance, he requests the court await the Supreme Court's decision in *Burton v. Waddington*, *cert. granted*, 126 S. Ct. 2352 (2006), to determine if there is a retroactive application of *Blakley*. However, it is not necessary to await decision in *Burton*; in this federal circuit, *Blakely* and its progeny, *United States v. Booker*, 543 U.S. 220 (2005), do not retroactively apply to sentences that became final before January 12, 2005. The Seventh Circuit recently made this clear in *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005):

-28-

> *Booker* does not apply to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), came down, is the appropriate dividing line; *Blakely* reserved decision about the status of the federal Sentencing Guidelines, see *id.* at 2538 n.9, so *Booker* itself represents the establishment of a new rule about the federal system.

*Id.* at 481.

Here, the court is able to conclusively determine Kruppstadt is entitled to no relief because his sentence became final well before January 12, 2005. As such, *Blakely* and *Booker* cannot constitute a ground for an attack under § 2255.

Kruppstadt's September 11, 2006 motion to amend based upon newly discovered evidence must similarly be denied. Kruppstadt's motion refers to co-defendant O'Neill's motion for leave to amend (*See Kevin O'Neill v. United States*, 04-CV-461 August 28, 2006 Motion at Docket # 25.) In this filing, O'Neill alleges that the government withheld pertinent information relating to the Title III phase of the underlying investigation. O'Neill frames his argument as a *Brady* violation, and also argues that his attorney was ineffective for failing to discover the government's supposed blunder earlier. Kruppstadt once again requests the court to adopt O'Neill's filing as his own. As will be set forth below, O'Neill's amended filing is without merit, and thus Kruppstadt similarly is not entitled to relief either.

O'Neill's motion to amend relates to his 2002 Freedom of Information Act ("FOIA") request for information relating to pre-authorization eavesdropping. O'Neill's initial response from the Milwaukee FBI Field Office indicated that no records were

found relating to the information he sought, and this finding was affirmed by the Department of Justice. O'Neill then filed a subsequent request with the criminal division in Milwaukee; and although his brief does not indicate, it appears that this request was similarly fruitless. O'Neill then references a FOIA request made by his co-defendant, Harvey Powers, in which Powers requested documents relating to image and wiretap interceptions. In response to this request, a two-page teletype was released, and at relevant part the teletype stated:

> Captioned investigation is a joint endeavor with the Milwaukee division of Alcohol, Tobacco, and Firearms (ATF). Investigation relates to criminal activities of the Wisconsin Chapter of the Outlaw Motorcycle Gang, to include murder, attempted murder, bombing, and drug distribution. Recently, ATF submitted an affidavit for microphone coverage in a Racine, Wisconsin residence. ATF has requested FBI expertise for the installation.

(O'Neill's Mot. to Amend, Ex. 1.11-1.12.)

Kruppstadt, through O'Neill's filing, argues this newly discovered teletype amounts to a *Brady* violation because it shows that the government withheld favorable evidence. In order to establish a *Brady* violation, Kruppstadt must be able to show: (1) the evidence at issue was favorable to him either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) and prejudice must have ensued. *See Strickler v. Greene,* 527 U.S. 263, 281 (1999) (referencing *Brady v. Maryland,* 373 U.S. 83 (1963)).

-30-

To begin, the evidence is certainly not exculpatory. If it shows anything, it is simply that a home in Racine, Wisconsin was the potential target for an eavesdropping device. Furthermore, Kruppstadt has provided no evidence that this teletype was suppressed by the government or that the prosecution was even aware of this document during relevant discovery disclosure times. Finally, Kruppstadt is unable to establish that any prejudice ensued. Evidence is material and prejudice ensues when a petitioner can show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler,* 527 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). As noted on numerous prior occasions, the evidence seized and used against Kruppstadt and his co-defendants at trial was overwhelming. *See United States v. Warneke*, 310 F.3d 542 (7th Cir. 2002). The additional disclosure of this teletype would not have changed the outcome for any defendant. The matters relating to preauthorization surveillance were thoroughly discussed by this court and the Seventh Circuit, and evidence of this nature would not have affected the earlier findings in the pretrial phase that the Title III evidence was admissible and seized without violation of Kruppstadt's Fourth Amendment rights. Therefore, the court is obliged to deny Kruppstadt's motion to amend.

Accordingly,

**IT IS ORDERED** that Robert Kruppstadt's petition under 28 U.S.C. § 2255 [Docket # 1] be and the same is hereby **DENIED**;

-31-

**IT IS FURTHER ORDERED** that Robert Kruppstadt's motion to hold his section 2255 petition in abeyance [Docket # 8] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Robert Kruppstadt's motion to amend his section 2255 petition [Docket # 9] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this __11th__ day of July, 2007.

BY THE COURT:

_s/ J. P. Stadtmueller_____
J. P. Stadtmueller
U.S. District Judge

-32-